## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

CRAIG MORRIS,

      **Petitioner,**

  v.

**WARDEN, Noble Correctional
Institution,**

      **Respondent.**

**CASE NO. 2:09-CV-00805
JUDGE SARGUS
MAGISTRATE JUDGE KING**

## OPINION AND ORDER

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Respondent asks that the petition be dismissed as unexhausted, or alternatively, that the petition be transferred to the United States Court of Appeals for the Sixth Circuit as successive. *See* Doc. No. 5. Petitioner has filed a response. Doc. No. 6. For the reasons that follow, respondent's motion to transfer, Doc. No. 5, is **DENIED**. Because this Court is unable to determine from the record whether petitioner's claims remain unexhausted, respondent is **DIRECTED** to advise the Court, within twenty-one (21) days, of the status of petitioner's appeal. If petitioner's claims are now exhausted, respondent shall file, within that period of time, a response that complies with Rule 5 of the Rules Governing Section 2254 Proceedings.

## PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

On the evening of December 31, 2002, a group of friends went to a club to celebrate the New Year. They drank and danced. Sometime after midnight, three members of the group, Latoya Crump, Yolanda Pedraza, and Jennifer Miles, left the club. When they got to their car in the parking lot, they noticed the front door of one of their friend's truck was open. Apparently, someone had broken into the truck. The three women approached two Columbus police officers in the parking lot to tell them about their friend's truck. The officers were working special duty that night at the club. The officers were already talking to two men: appellant and his friend, Peter Fergerson. The men were complaining to the officers that Fergerson had been stabbed inside the club during an altercation. When the women told the police about the break-in, appellant commented that stuff like that happens around here.

After the conversation with the police officers, Pedraza called George Hill, a friend who was still inside the club, to report that their friend's truck had been broken into. The three women walked to Pedraza's car, got inside, and waited for their friends. Appellant and Fergerson followed the women and stood outside of Pedraza's car. Fergerson began talking to someone on his cell phone. Pedraza heard him read her license plate number to the person on the phone. Latoya Crump heard him say "[s]hould we do him or should we do the girl?" The three women remained in the car.

Eventually, the women's friends came out of the club. This group included Keith Reynolds, whose truck had been broken into, Hill, Wayne Crump (Latoya's brother), Robert Briggs, Cynthia Briggs, and Tamika Jones. The three women got out of Pedraza's car and met the rest of the group in front of Reynolds' truck. Reynolds left the area to talk to the police officers. The rest of the group remained near the truck. However, Pedraza, Latoya Crump, and Miles walked to Pedraza's car to leave. Miles and Latoya sat inside the car while Pedraza talked to a friend outside the car.

Moments later, appellant approached the large group of friends in front of Reynolds' truck, pulled out a gun, and pointed it at Wayne Crump. Latoya Crump saw appellant hold the gun up to her brother's head. Appellant then said something to Wayne Crump, who turned around and saw appellant holding the gun. Wayne immediately grabbed appellant's hand and began wrestling with him. After a short struggle for the gun, Crump's hand slipped from the gun, and he turned to run away from appellant. Appellant then opened fire. Appellant shot four people: Wayne Crump, Robert Briggs, Cynthia Briggs, and Tamika Jones.

Reynolds was returning to his truck with Columbus Police Officers James Cummings, and Glenn Bray. They were about

30-40 yards from Reynolds' truck when they heard the shots. Officer Bray saw appellant firing a gun in the vicinity of Reynolds' truck. Officer Bray drew his gun and repeatedly yelled at appellant to drop his gun. Appellant did not immediately drop his gun but stopped shooting and turned toward Officer Bray. After Officer Bray fired several shots, appellant finally dropped the gun, although he did not get down on the ground as directed. Officer Bray approached appellant, pushed him down to the ground, and handcuffed him. Officer Bray did not see any other individual with a gun that night.

Detective David Ramey of the Columbus Police Crime Scene Search Unit arrived at the scene of the shooting the next day. He collected three .45 caliber casings from the parking lot, some distance from Reynolds' truck. These casings had been fired from Officer Bray's weapon. Detective Ramey also collected eight 9-millimeter shell casings. He found these shell casings in front of Reynolds' truck, close to where the victims were shot. These shell casings had been fired from appellant's gun.

A Franklin County Grand Jury indicted appellant with five counts of felonious assault in violation of R.C. 2903.11.[FN1] Each count also contained a firearm specification pursuant to R.C. 2941.145. Appellant entered a not guilty plea to the charges and proceeded to a jury trial. At trial, the witnesses and police officers at the scene testified to the version of events described above. Appellant and his friend, Peter Fergerson, both testified to a different version of events.

FN1. Counts 2 through 5 of the indictment were charged as felonies of the second degree, while Count 1 named Officer Bray as the victim and was, therefore, a felony of the first degree. R.C. 2903.11(D).

Fergerson explained that he and appellant went to the club with a number of friends. Once inside, Fergerson got into an altercation with some other club patrons and appellant tried to assist him. Club staff escorted those involved in the altercation out of the club. Fergerson approached one of the officers outside of the club. He asked if the officers had seen the people involved in the altercation because one of them had tried to stab him. The officers had not seen anyone. The officers looked for a wound on Fergerson's back but did not see one. Fergerson declined any medical assistance. Fergerson left the officers and started talking on his cell phone to a friend. He then saw a man in the parking lot pointing at him. Fergerson assumed the man had been involved in the fight inside the club, so he walked over to the man and started arguing with him. Fergerson pushed the man in the face. The man backed up, and then Fergerson heard two gunshots. He then heard more shots and, when he looked back, saw appellant firing a gun.

3

Appellant described a similar version of events. According to appellant, he and Fergerson approached police officers in the parking lot after they were kicked out of the club. Fergerson was upset about the fight and appellant tried to calm him down. When the officers provided no assistance, appellant went to his car to wait for their other friends to leave the club. He was sitting in his car when he saw his friend, Fergerson, arguing with some people. Appellant's car was parked a short distance from Reynolds' truck. Fearing that these were the people involved in the fight inside the club, appellant grabbed his gun, loaded it, put it in his pocket, and walked toward his friend. Appellant saw Fergerson arguing face-to-face with a man. Fergerson pushed the man in the face, and appellant immediately attempted to pull Fergerson away. A split second later, appellant heard two gunshots. Appellant took out his gun and began shooting. Appellant never denied shooting a gun that night, but explained that he only shot in self-defense. Appellant dropped his gun once he heard the police officer yelling at him.

The jury rejected appellant's version of events and found him guilty of four counts of felonious assault and the attendant firearm specifications. The jury acquitted him of the felonious assault charge against Officer Bray. The trial court sentenced him accordingly.

The day of sentencing, however, appellant's trial counsel filed a motion for mistrial based on juror misconduct.[FN2] Appellant alleged that a juror had attempted to bribe him in return for a not guilty verdict. Appellant presented an affidavit from an individual named Maceo Biggers in support of the motion. Biggers also appeared before the trial court and testified that a juror contacted friends of his, Tony Harvard and a woman only identified as Nay, and told them that the juror would find appellant not guilty in exchange for $2,000. Harvard called Biggers about the bribe, and Biggers put appellant on the phone. Biggers never talked to the juror. The trial court denied appellant's motion without explanation.

FN2. Although captioned as a motion for mistrial, the trial court considered it as a motion for new trial pursuant to Crim.R. 33.

Appellant did not originally appeal his convictions. However, he later filed a motion for leave to file a delayed appeal. After this court denied appellant's motion, a federal court granted appellant a conditional writ of habeas corpus, directing the state to reinstate his appeal. In response, the state filed a motion to reopen this appeal. This court granted the state's motion and reinstated appellant's appeal. Appellant assigns the following errors:

First Assignment of Error: The court erroneously overruled

appellant's challenge for cause of a juror whose views on self-defense made him biased or otherwise unsuitable to serve as a juror within the meaning of Criminal Rule 24(B)(9) and (14).

Second Assignment of Error: The court erroneously sustained the prosecution's objection to appellant'[s] excited utterance at the time he was taken into custody that another individual had a gun.

Third Assignment of Error: Appellant received ineffective assistance of counsel.

Fourth Assignment of Error: Appellant established by a preponderance of the evidence that he acted in self-defense. Consequently[,] his convictions for felonious assault were against the manifest weight of the evidence.

Fifth Assignment of Error: Appellant established he acted in self-defense by a preponderance of the evidence. The defense having been established as a matter of law, the jury's guilty verdicts are not supported by legally sufficient evidence.

Sixth Assignment of Error: The court erroneously overruled appellant's motions for acquittal pursuant to Criminal Rule 29.

Seventh Assignment of Error: Imposition of consecutive sentences based on judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant violated appellant's Sixth Amendment rights.

*State v. Morris*, 2009 WL 1444089 (Ohio App. 10th Dist. May 21, 2009). The state court of

appeals affirmed petitioner's convictions, *id.*, and on September 9, 2009, the Ohio Supreme

court dismissed petitioner's subsequent appeal. *State v. Morris*, 123 Ohio St.3d 1408 (2009).

Thereafter, on June 5, 2009, petitioner filed a *pro se* application to reopen his appeal

pursuant to Ohio Appellate Rule 26(B). He asserted the ineffective assistance of appellate

counsel based on his attorney's

> failure and refusal to submit the claims which I instructed him
> to raise... and his failure to raise the grounds which the Federal
> Court instructed be exhausted.

*Exhibit 20 to Motion to Dismiss or Transfer.* Petitioner subsequently filed a motion to amend

his Rule 26(B) application to additionally assert:

> Appellate counsel delivered deficient performance by failing to raise a claim that appellant's sentence is void because the trial court failed to give the proper PRC notification pursuant to R.C. 2967.28.

*See Exhibits 21, 22 to Motion to Dismiss or Transfer*. On August 20, 2009, the appellate court denied petitioner's Rule 26(B) application. *Exhibit 24 to Motion to Dismiss or Transfer*. Petitioner filed a timely appeal from that decision to the Ohio Supreme Court. *Exhibits 25, 26 to Motion to Dismiss or Transfer*. This Court is unable to determine from the record whether the Ohio Supreme Court has issued a decision on that appeal.

On September 15, 2009, petitioner filed the instant *pro se* petition for a writ of habeas corpus. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  Denial of right of appeal.
>
> I was denied my right of appeal of the issues which was to be raised.
>
> 2.  Denial of effective counsel on appeal.
>
> For not raising errors which were to be raised.
>
> 3.  The 10[th] Dist. Appellate Court abused their discretion.
>
> By ignoring the Constitution and laws and holdings within the case holdings in re. to #2:06-cv-324 (Opinion and Order).
>
> 4.  The 10[th] Dist. Appeals Court abused their discretion when falsely quoted *Foster*.
>
> The appeals court denied my claim based on the *Foster* decision. But wrongly quoted the holding of *Foster* which if it had been read correctly, relief would be granted.

It is the position of the respondent that petitioner's claims are unexhausted, and alternatively, that this action constitutes a successive petition.

## SUCCESSIVE PETITIONS

Under Title 28 U.S.C. §2244(b)(3)(A), before a second or successive petition for a writ of habeas corpus can be filed in the district court, the applicant shall move in the appropriate circuit court of appeals for an order authorizing the district court to consider the application. The Antiterrorism and Effective Death Penalty Act ("AEDPA") divests a district court of jurisdiction to entertain a successive post-conviction motion or petition for writ of habeas corpus in the absence of an order from the court of appeals authorizing the filing of such successive motion or petition. *Nelson v. United States*, 115 F.3d 136 (2nd Cir. 1997); *Hill v. Hopper*, 112 F.3d 1088 (11th Cir. 1997). Unless the court of appeals has given approval for the filing of a second or successive petition, a district court in the Sixth Circuit must transfer the petition to the Sixth Circuit Court of Appeals. *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997)(*per curiam*). Under §2244(b)(3)(A), only a circuit court of appeals has the power to authorize the filing of a successive petition for writ of habeas corpus. *Nunez v. United States*, 96 F.3d 990 (7th Cir. 1996).

Petitioner filed two prior federal habeas corpus petitions. On November 14, 2005, this Court dismissed his first petition without prejudice as unexhausted. *Morris v. Warden*, Case No. 2:05-cv-00903 (S.D. Ohio November 14, 2005). This Court conditionally granted petitioner's second federal habeas corpus petition on petitioner's claim that he had been denied the effective assistance of counsel due to his attorney's failure to file an appeal; the state was directed to reinstate petitioner's appeal or release him. *Morris v. Warden*, 2:06-cv-00324 (S.D. Ohio March 24, 2008). After further state court proceedings, petitioner now

asserts in the instant federal habeas corpus petition that he was denied the effective assistance of counsel and his right to appeal because his appellate attorney failed to raise in his reinstated appeal all of the claims that petitioner had requested. Petitioner also complains that the appellate court abused its discretion and "falsely quoted *Foster*." *See Petition; Traverse*. Respondent asks that this action be transferred to the United States Court of Appeals for the Sixth Circuit as a successive petition. *See Motion to Dismiss or Transfer*.

In his current federal habeas corpus petition, petitioner challenges only the constitutionality of his reinstated appeal. The claims raised in this action are new claims that could not have been raised in petitioner's prior §2254 petitions. Under these circumstances, this Court is not persuaded that this action constitutes a successive petition as defined subject to the AEDPA's requirement authorization by the Court of Appeals.

> AEDPA does not define what constitutes a "second or successive" petition. Courts have uniformly rejected a literal reading of Section 2244, concluding that a numerically second petition does not necessarily constitute a "second" petition for the purposes of AEDPA. *See United States v. Barrett*, 178 F.3d 34, 42-44 (1st Cir. 1999). To interpret the term "second or successive," courts look to the pre-AEDPA abuse-of-the-writ doctrine. *See Martinez-Villareal*, 523 U.S. at 643-45, 118 S.Ct. 1618; *Muniz v. United States*, 236 F.3d 122, 127 (2d Cir. 2001) (*per curiam*) ("We ... answer the question of whether a petition is second or successive with reference to the equitable principles underlying the abuse of the writ doctrine.").
>
> Under the abuse-of-the-writ doctrine, a subsequent petition is "second or successive" when it raises a claim that was, or could have been, raised in an earlier petition. *See McCleskey v. Zant*, 499 U.S. 467, 493-95, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *cf. Thomas v. Superintendent/Woodbourne Corr. Facility*, 136 F.3d 227, 229 (2d Cir. 1997) (*per curiam*) (instructing a district court to determine whether a petition was successive by considering "whether the prior petition was dismissed with prejudice and whether the instant petition attacks the same judgment that was attacked in the prior petition"). Consequently, a claim raised in a prior Section 2254 petition, but dismissed as premature, is not

8

subject to the gatekeeping provision of Section 2244. *See Martinez-Villareal,* 523 U.S. at 643-44, 118 S.Ct. 1618. Similarly, a petition is not "second or successive" when a state petitioner whose first petition was dismissed for failure to exhaust state remedies brings a new petition based on the exhausted claim. *See Camarano v. Irvin,* 98 F.3d 44, 46 (2d Cir. 1996) (*per curiam*) ("[A]pplication of the gatekeeping provisions to deny a resubmitted petition ... would conflict with the doctrine of writ abuse...."). By the same logic, when a subsequent habeas petition contains both a new claim that could not have been raised in a prior petition and a claim that was previously raised, we deem such petition "first" as to the new claim and "second" as to the old claim. *See Galtieri v. United States,* 128 F.3d 33, 37-38 (2d Cir. 1997).

*James v. Walsh,* 308 F.3d 162, 168 (2nd Cir. 2002); *see also In re Taylor,* 171 F.3d 185, (4th Cir. 1999) (concluding that second § 2255 motion raising solely issues arising from re-sentencing after grant of first § 2255 motion did not constitute a successive petition); *see also Bachman v. Wilson,* 2007 WL 4553988, at * *7, 9 n. 16 (N.D. Ohio December 19, 2007) (noting that second habeas corpus petition raising issues relating to sexual predator hearing that could not have been raised in first habeas corpus petition was not a successive petition).

Therefore, respondent's request to transfer this action to the Sixth Circuit as a successive petition is **DENIED**.

### EXHAUSTION

Alternatively, respondent contends that this action must be dismissed as unexhausted. Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *Castille v. Peoples,* 489 U.S. 346, 349 (1989); *Silverburg v. Evitts,* 993 F.2d 124, 126 (6th Cir. 1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the

9

state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Where alternative state remedies are available to consider the same claim, exhaustion of only one of those remedies is all that is necessary. *Keener v. Ridenour*, 594 F.2d 581, 584 (6th Cir. 1979). A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he seeks to present for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987).

Respondent contends that the Ohio Supreme Court has yet to issue a decision on petitioner's Rule 26(B) appeal. Because this Court is unable to determine from the record whether petitioner's claims remain unexhausted, respondent is **DIRECTED** to advise the Court within twenty-one (21) days, of the status of petitioner's appeal. If petitioner's claims are now exhausted, respondent shall file, within that period of time, a response that complies with Rule 5 of the Rules Governing Section 2254 Proceedings.

**IT IS SO ORDERED**.

2-18-2010
_____
Date

_____
Edmund A. Sargus, Jr.
United States District Judge